483 So.2d 672 (1986)
Rodney J. SIGNORELLI
v.
Frank A. JONES, Sr., As Natural Tutor of His Minor Son, David A. Jones, and Frank's Surplus Co., Inc.
Melanie A. CONDITT
v.
Frank A. JONES, Sr., As Natural Tutor of His Minor Son, David A. Jones and Frank's Surplus Co., Inc.
Nos. 85-CA-583, 85-CA-584.
Court of Appeal of Louisiana, Fifth Circuit.
February 13, 1986.
Rehearing Denied March 17, 1986.
Robert A. Pitre, Jr., Gretna, for plaintiff-appellant.
Raymond S. Maher, Jr., Berrigan, Deanielson, Litchfield, Olsen & Schonekas, New Orleans, for defendants-appellees.
Before CHEHARDY, CURRAULT and GRISBAUM, JJ.
CURRAULT, Judge.
This is an appeal from a jury verdict finding defendant, David Jones, not negligent in an accident between a motorcycle owned and driven by plaintiff, Rodney Signorelli, and a pickup truck driven by defendant. We reverse and render judgment for plaintiff.
The facts reveal that on February 28, 1981, at approximately 8:15 p.m., the plaintiff, Rodney Signorelli, was driving his 1946 Harley Davidson motorcycle in a westerly direction in the inner lane of Lakeshore Drive, a four-lane street in the City of New Orleans. At the time, he was returning to Jefferson Parish after watching the Endymion parade. Plaintiff's girlfriend, Melanie Conditt, was riding behind him on the motorcycle.
Defendant, David Jones, was parked in a parking lane at an angle to Lakeshore Drive on the evening of the collision. While the area normally was congested with traffic and youthful pedestrians, on this night the vehicle and pedestrian traffic was not heavy. Defendant's girlfriend was a passenger in the pickup truck.
The accident occurred when defendant backed his truck out of the parking space into the street blocking both westbound lanes and a part of the eastbound lane. At *673 the point where the pickup stopped its backing movement, the vehicles collided causing property damage and injuries to the plaintiff and his guest passenger.
As a result of the damages suffered by plaintiff, he filed suit on May 20, 1981 against Frank Jones, Sr., as natural tutor of his minor son David Jones, who was 17 years old at the time of the accident, and Frank's Surplus Company, Inc. At a later date, an amended petition was filed substituting Betty Jones, David Jones's mother due to the death of Mr. Jones, and also naming David Jones as a defendant as he had attained his majority, as well as Commercial Union Insurance Company, the automobile insurer.
In April of 1982, the action was consolidated with a suit brought by Melanie Conditt, plaintiff's passenger, against the same parties. The defendants thereafter filed a third-party demand against plaintiff, apparently for indemnity or contribution in respect to Ms. Conditt's suit. Prior to trial, Melanie Conditt compromised her claim for Thirty-Five Thousand Dollars ($35,000) and signed an assignment of rights to defendant for Thirty-Five Thousand Dollars ($35,000) plus a Charity Hospital bill.
The trial was held on September 19, 20, 21 and 22, 1983, after which the jury returned a verdict finding no negligence on the part of defendant, David Jones, in the original demand and no negligence on the part of third-party defendant, Rodney Signorelli, in the third-party demand. The jury verdict was made judgment of the court on September 28, 1983.
Plaintiff filed a motion for new trial or judgment notwithstanding the verdict which was heard and denied by the trial court on two occasions. Plaintiff thereafter perfected this appeal from the jury verdict.
Appellant specifies ten errors, only one of which we find necessary to address, that is:
"The trial court erred when it denied plaintiff's motion for judgment notwithstanding the verdict and/or for a new trial on the grounds that the verdict was contrary to the law and the evidence."
Appellant's first assignment of error alleges that the trial court erred in failing to grant a judgment notwithstanding the verdict or a new trial because the verdict was contrary to the law and evidence. Appellant argues that appellee violated LSA-R.S. 32:103 and LSA-R.S. 32:281(A) which state as follows:
LSA-R.S. 32:103
"No person shall move a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety."
LSA-R.S. 32:281(A):
"The driver of a vehicle shall not back the same unless such movement be made with reasonable safety and without interference with other traffic."
The law provides that motorists have a duty to maintain a reasonable vigilance or to see what he should have seen by the exercise of due diligence. Baach v. Clark, 442 So.2d 514 (La.App. 5th Cir. 1983), writ den. 447 So.2d 1067 (La.1984); Landry v. Aetna Ins. Co., 438 So.2d 628, rev. on other grounds 442 So.2d 440; on remand 449 So.2d 1092 (La.App. 4th Cir. 1984). The duty of a backing motorist is one of great care and attention to insure that the backing maneuver can be accomplished without interfering with other vehicles. Schackai v. Tenneco Oil Co., 436 So.2d 729 (La.App. 4th Cir.1983); writ den. 440 So.2d 759 (La.1983); Vinet v. Bostic, 305 So.2d 138 (La.App. 4th Cir.1974).
At the time of the accident herein, appellee was 17 years old and had been driving for two years. The roadway at which the accident occurred is four lanes with two lanes going east and two lanes going west. Appellee stated that he and his girlfriend had been at the area for five to ten minutes waiting for friends. The parking lanes were at angle west to east. Vehicles were parked on both sides of the truck; but as the pickup is higher than an automobile, he was able to see clearly down the road in both directions. He stated the *674 traffic was light when he began to back out into the lanes travelling west. Because the tail of the cars on either side were "pinched in", he stated he could not back only into the right lane but was forced to obstruct both westerly lanes. Appellee stated that he looked in both directions and after one or two vehicles passed in the eastward lanes, he backed into the street. He admitted that he looked away from the direction of the oncoming traffic which had the right-of-way, and did not again look in that direction until he heard the squeal of the tires, at which time he looked in plaintiff's direction and saw the plaintiff about thirty feet away.
Appellant testified that appellee backed into the street when the motorcycle was approximately 30-40 feet from point of impact. He stated he first observed the truck when it was parked, but that it backed out fast. He further stated that he was not travelling faster than 30-35 m.p.h. and that he based that on the fact that he was in third gear. He noted a motorcycle has limited speed range for the gears. Finally, he said no one passed them and they passed no other cars moving in the same direction as he was travelling.
Ms. Conditt, the passenger on appellant's motorcycle, stated that she was looking around after coming off the Marconi Drive bridge. She said that appellant said something and that she looked ahead and saw the truck pull out in front of them and stop. At that time, appellant put on his brakes and they skidded into the rear of the truck. She testified that she saw the truck pull out approximately thirty feet away. Ms. Conditt said they were not travelling too fast or too slow, but enough to keep balanced on the motorcycle.
While appellee testified he did not observe the motorcycle before it skidded, he estimated that appellant was travelling at 45 m.p.h. Two of appellee's witnesses, one who was 17 and the other 16 years old at the time of the accident, also stated appellant was speeding. However, they also said that they saw the plaintiff when he came off the Marconi Drive bridge, but then testified that they did not see the plaintiff until he was approximately 30 to 40 feet from the defendant's truck. The Marconi Drive Bridge, according to the police officer and the other witnesses, was approximately 100 yards away from point of impact and from where the two witnesses were standing. One of them testified to facts which were contradicted by all of the other testimony.
After listening to the testimony, the jury found that both appellant and appellee were not negligent. We hold this finding manifestly erroneous as to appellee. There was no evidence or reason presented for appellee's failure to see appellant. He stated he could see clearly to the Marconi Drive bridge 100 yards from the impact. The evidence showed that night was clear and dry and that the area was well lit. While we agree with the finding of no negligence on the part of appellant, the verdict is contrary to the law and evidence as to defendant-appellee. Because of this finding, we must assess damages based on the record.
According to the evidence, the motorcycle struck the rear end of the truck causing both appellant and his passenger to fall. The passenger slid beneath the truck and she suffered a broken leg in the fall. Appellant complained of minor pains and of striking his head after the accident and both were taken to East Jefferson General Hospital. He said he was given a prescription which he did not take. At trial, he stated he suffered injuries to his back and hip which developed shortly after the collision and that he had no prior problems with his back and hip, but he did have prior damage to his leg. The day following the accident, appellant testified he was stiff and limping; but as it was the day before Mardi Gras, he sought relief from Dr. Edward Mernin because he was not able to stand up straight due to pain and stiffness. Because the chiropractic treatment helped his symptoms, he continued to see Dr. Mernin three times a week for six to seven weeks and sporadically after he was discharged. Appellant also saw Dr. Charles *675 Anastasio once and a Dr. Mohnot once. He did not return because neither physician seemed interested or was able to relieve his discomfort. When he went to Dr. Mohnot, he was also complaining about his left arm going numb occasionally. He was still seeing Dr. Mernin at time of trial and testified to some stiffness in the upper back and continued problems with his left arm.
At the time of the accident, appellant was doing automobile detail work, earning One Hundred Fifty Dollars ($150) a week. He did not work for six weeks after the collision. After the six weeks, he returned to work on Dr. Mernin's advice, but not to the same employer. The evidence showed that appellant's work history was sporadic. He did not work steadily because he stated he had no obligations which required a steady income. At time of trial, he was unemployed.
Dr. Charles Anastasio, an orthopedic surgeon, examined appellant once, on February 19, 1982. He found no objective findings of serious injury to the musculoskeletal system by clinical examination. The doctor was of the opinion that appellant originally sustained a cervical and lumbrosacral strain which had resolved itself. He stated most of these type injuries commonly resolve themselves in six to eight weeks.
Dr. Edward A. Mernin, a doctor of chiropractic, treated appellant from March 2, 1981, and was continuing to treat him at time of trial. His examination indicated abnormal alignment of appellant's back, neck and pelvic area. His opinion was that appellant suffered from an acute traumatic lower back instability associated with lower lumbar and sacrum subluxation complex and posterior gravitational syndrome resulting in rotation complicated by a pelvic tautness and tippage. He explained that lower back instability meant that musculoskeletal development in the pelvis, which is seated in the sacrum with the lumbar spine on top, is jarred out of position through injury and tears the ligamentous tissue. This causes instability since the ligament attachments are too loose to hold the spine in proper position. He further explained that the trauma caused an imbalance in the lower lumbar and sacral spine in that the fifth lumbar was forced backwards out of its normal position and the tissue surrounding the ligaments and musculature surround the lumbrosacral spine was pulled. Further, the cervical spine was bent forward in an abnormal position. He stated that many of the vertebrae were out of place and that rotation and sublexation (or malposition less than dislocation) of the thoracic spine was a result of the pelvis being lower on one side forcing the spine to rotate in order to maintain straight posture.
Treatment consisted of specific spinal adjustments, manipulation adjunctive with diathermy into segmented traction (i.e., short wave beam aimed into body tissue without burning surface), ultrasound and electrical wave stimulus. Appellant was treated sixteen times in March, 1981; fourteen times in April; six times in May; and seven times in June, 1981. He was then discharged symptom-free but under maintenance care which required returning periodically for adjustment to keep his body aligned. He returned to the chiropractor, however, in February, 1982, and saw the doctor four times that month. In March, he was treated eleven times and in October was seen five times. In September, 1983, he received two treatments.
Dr. Mernin testified that from March, 1981 to September, 1983, appellant was greatly improved. He found more stability in the spine. However, he noticed some arthritic calcification in the mid-cervical spine. His prognosis was that appellant would continue to have some problems which would manifest in times of fatigue or stress. In his opinion, the accident probably caused the injury. The doctor's unpaid bill totalled Five Thousand Three Hundred Twenty-Eight Dollars and Forty Cents ($5,328.40).
The record reflects that appellant had stipulated medical expenses due to the injuries in the amount of Six Hundred Fourteen Dollars and Thirty-One Cents ($614.31).
*676 The estimates for storage of and repairs to the motorcycle were presented. The motorcycle damage in the accident was a 1946 Harley Davidson which, because of its age, presented difficulties in finding parts. Glen Cornibe, of the Jefferson Parish Sheriff's office repair shop, was qualified as an expert in the repairs and estimating of repairs of Harley Davidson motorcycles. He testified that at the time he estimated the repairs necessary to Rodney Signorelli's 1946 Harley Davidson, he was employed by Harley Davidson of Jefferson. He estimated the labor, less cosmetic work, to be Six Hundred Thirty-Five Dollars ($635) and the parts to be Two Thousand Four Hundred Forty-Two Dollars and Thirteen Cents ($2,442.13).
On September 20, 1983, Al Lowe of Lowe's Auto Service testified that Rodney Signorelli incurred a storage bill of Four Dollars and Seventy-Five Cents ($4.75) per day. The total bill was Four Hundred Thirty-Two Dollars ($432).
Paul Santangelo of Paul's Body Shop estimated the cosmetic repairs to the 1946 Harley Davidson motorcycle as Five Hundred Forty-Nine Dollars ($549).
Appellant urges that in addition appellant should receive Nine Hundred Dollars ($900) in lost wages based on his missing six weeks of work at One Hundred Fifty Dollars ($150) a week. He further asserts that appellant is entitled to Thirty-Five Thousand Dollars ($35,000) for general damages and Thirty-Nine Thousand Three Hundred Sixty Dollars ($39,360) for future medicals based on past bills of Dr. Mernin, allowing one visit per month for 41 years.
We are of the opinion that appellant is entitled to receive his stipulated damages, Dr. Mernin's bill, the amount of motorcycle repair estimates and storage charges and the $900 lost wages as special damages or a total of Ten Thousand Nine Hundred Dollars and Eighty-Four Cents ($10,900.84).
As to the general damages and future medicals, in our opinion, appellant basically suffered at least a sixteen-week injury with occasional flare-ups. We find that Ten Thousand Dollars ($10,000) in general damages and Two Thousand Dollars ($2,000) in future medicals will amply compensate appellant for those items of damages.
Accordingly, after a review of the law and evidence, we hereby reverse the trial court judgment as to the negligence of defendant, David Jones; and further find defendants, David A. Jones and Commercial Union Insurance Company, liable in solido to plaintiff, Rodney J. Signorelli, in the amount of Twenty-Two Thousand Nine Hundred Dollars and Eighty-Four Cents ($22,900.84). Costs are to be paid by appellee.
REVERSED AND RENDERED.